**ISBRANDTSEN CO., Inc. et al.**

v.

**SCHELERO et al.**

**Civ. A. No. 14069.**

United States District Court
E. D. New York.

Jan. 19, 1954.

Lorenz, Finn & Giardino, New York City, by Alfred Giardino, Esq., and John F. X. Finn, New York City, for plaintiffs.

Woll, Glenn & Thatcher, Washington, D. C., Katz and Jaffe, New York City, by David Jaffe, New York City, Johnson & Schulman, Brooklyn, by Joseph Goldberg, New York City, for Joseph Schelero and Ace M. Keeney.

Seymour W. Miller, Brooklyn, N. Y., for Brotherhood of Marine Engineers.

BYERS, District Judge.

This is a plaintiffs' motion, based upon an order to show cause granted and made returnable on January 8, 1954 for a temporary injunction or for remand of the controversy to the court from which it was removed.

At the conclusion of argument on that day, the temporary stay contained in the order to show cause was vacated and both sides were given until January 12th at 3:00 P.M. to file briefs and affidavits.

The complaint and supporting affidavits were served on the 7th inst. in an action brought in the Supreme Court of New York, Kings County, and on that day an order to show cause was granted by a Justice of that court, returnable on the following day, for a temporary injunction directed against picketing at the 29th Street pier and others; also interference with the performance of their duties by longshoremen and other employees of the plaintiff on piers leased or worked by the plaintiffs; and misrepresentation, orally or in writing, that the plaintiff, Universal, etc. Company, unfairly discharged the defendant, Joseph Schelero; also from molesting any person, whether a member of the defendant Brotherhood of Marine Engineers, S.I.U (to be called B.M.E.) in the performance of their duties on the piers, ships, etc. of the plaintiffs, and from attempting to induce, persuade or intimidate any employees of the plaintiffs or any member of the defendant associations to fail or refuse to report for work or perform their normal services.

At the call of that motion, it appears that the defendants had caused the case to be removed to this court, according to a petition, later to be referred to; thus the present status of this controversy.

The complaint and eight supporting affidavits (except as to those of Isbrandtsen and Giardino) and the opposing affidavit of the defendant Schelero, and of Bovarski, Erato, Tomburello, et als, constitute the factual basis upon which this motion is to be decided.

The complaint discloses that the plaintiff first named (to be called Isbrandtsen) is a New York corporation engaged in the business of shipping, which leased and operated the 29th Street pier (Brooklyn), and that the other plaintiff (to be called Universal) is under contract with Isbrandtsen to perform the latter's stevedoring work, including the loading and discharge of cargo from vessels at the said pier.

The defendant, International Longshoremen's Association, A. F. of L. (to be called I.L.A., A.F.L.) is an unincorporated labor organization, having its offices and place of business in Brooklyn, and the defendant, Brotherhood of Marine Engineers S.I.U. (to be called B.M. E.) is a similar association, also having an office in Brooklyn. As to the latter the complaint alleges that it is a party to a collective bargaining agreement with Isbrandtsen concerning the hours, wages, terms and conditions of employment of the latter's engineers, and which agreement contains a specific provision prohibiting any strike, lock-out or work stoppage. It is asserted that any action of B.M.E. to refuse to supply power "if longshoremen try to work would be in contravention of their collective bargaining agreement and a violation of laws governing the operation of ships."

It is further alleged that prior to October 1, 1953 there was in existence a collective bargaining agreement between the plaintiffs and I.L.A. as it then was, governing wages and employment conditions of longshoremen, which by its terms expired September 30, 1953.

Since October 1, 1953 and until the present time, there has been no collective bargaining agreement in existence

governing the terms and conditions of employment of longshoremen in the Port of New York.

The present controversy centers upon the discharge by Universal on December 14, 1953 of the defendant Schelero, who was then in its employ performing miscellaneous duties; also he was the shop steward representing longshoremen who were members of I.L.A., A.F.L. That discharge was for cause as the plaintiffs allege, and the fact of discharge is not denied, but the opposing papers assert that it was due to his activities on behalf of I.L.A., A.F.L. in opposition to those of the then recently formed union known as I.L.A. Ind.

It seems to have been assumed in the presentation of this motion that these two unions are striving for recognition as the bargaining agent of the longshoremen in the Port of New York, but up to the present time neither has been so certified.

Throughout the discussion it is necessary to remember that as at December 14, 1953 and ever since there has been in existence no collective bargaining agreement.

It was conceded at argument that the plaintiffs are engaged in interstate commerce, and that the picketing of which they complain has not been accompanied by violence.

The conduct which the plaintiffs seek to enjoin is this peaceful picket by the I.L.A., A.F.L., and also the action of B. M.E. in refusing to supply power to the deck of ships or to shift ships with main engines if any longshoremen should try to work in unloading two named ships at the 29th Street pier, unless the defendant Schelero is rehired by Universal, as appears from the affidavit of the defendant Wilbur Dickey, paragraph 3, in which the following occurs:

"He (Brovarski, a general organizer of the I.L.A., A.F.L.) told me that this was a valid picket line which was set up by the workers in the pier themselves to protest the unfair discharge of one of their co-workers, Schelero, and while they had no particular dispute with Isbrandtsen, they did have this beef with the Universal, etc."

The result of the complaint of activities has been that longshoremen (five gangs on January 2nd and seven on January 3rd) who reported at the pier in question, refused to perform their tasks after listening to arguments by Schelero; and the members of B.M.E. have made it clear that they intend to abide by the instructions issued to them hereinafter to be quoted.

This means that if the longshoremen continue their present conduct, two ships at the 29th Street pier will remain idle as they have been since the 3rd and 4th days of this month.

The question for decision on the motion to remand is clearly shown to be:

Is this court to rely upon the allegations of the complaint as defining the matters in issue between the parties, or is it to look to the opposing affidavits to discover whether the discharge of Schelero and the refusal to hire him is a form of camouflage to conceal the real nature of the controversy, which is actually a purpose on the part of the plaintiffs as employers to exert their influence in favor of one union against another, and at a time when the National Labor Relations Board (on the complaint of Schelero) is presumptively performing its own allotted function in striving to establish order in this truly empirical field of social adjustment?

The complaint reveals no action or omission on the part of the plaintiffs or of any defendant consistent with a purpose to interfere with the right of longshoremen "to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities, for the purpose of collective bargaining or other mutual aid or protection * * *." Section 7 of the Labor Management Relations Act, Tit. 29 U.S.C.A. § 157.

The complaint therefore is to be construed in the light of what it avers, and

not something else, namely what the defendants say that it should allege in order to vindicate their own contentions concerning the true nature of the controversy as they say they see it.

The presently material allegations of the complaint may be paraphrased thus:

The absence of a collective bargaining agreement between either plaintiff and longshoremen from and after October 1, 1953;

The right of management to discharge an employee for cause, namely, the discharge of Schelero on December 14, 1953 by reason of his stating to the pier superintendent of Universal that he and not his employer would select and hire the longshoremen to work at the said pier;

That Schelero was never the hiring agent of either plaintiff nor had he been so licensed by the Waterfront Commission; and

The picketing and the results thereof as heretofore recited.

The sign carried by the pickets bears this legend:

"Universal Stevedoring Company has unfairly discharged one of our members for taking up valid complaints. A. F. of L.—I.L.A."

Thus the discharge is plainly stated to be the subject of protest as the complaint alleges, and at a time when there was no bargaining agreement in existence, which means that there could be no infringement of a non-existing contract.

■ The defendants argue that the following provisions of the Taft-Hartley law are drawn into question by the allegations of the complaint, which will be quoted for ready reference.

*As to hiring and firing.*

Title 29 U.S.C.A. § 158(b)(1)(B):

"It shall be an unfair labor practice for a labor organization or its agents—

"(1) to restrain or coerce * * (B) an employer in the selection of his representatives for the purposes of collective bargaining or the adjustment of grievances".

The complaint does not allege that Schelero or his union restrained or coerced Universal in any respect; the allegation being that he asserted the right to decide what persons should be employed as longshoremen as though he held the position occupied by Peter J. Kiplock, Jr., the pier superintendent and hiring agent for Universal. In so far as the complaint discloses Schelero asserted that capacity without reference to labor union membership.

■ Again, the defendants argue that the complaint asserts a violation of the following section:

"(2) to cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a)(3) of this section (this forbids an employer to discriminate in specified but not relevant respects) or to discriminate against an employee with respect to whom membership in such organization has been denied or terminated
* * *."

The matter of possible loss of membership by Schelero in any labor union has not been referred to; it is his alleged insistence upon a purpose to hire longshoremen without the right so to do which is said to be the cause of his discharge. The abusive language imputed to Schelero during the argument of December 14, 1953, if he used it, would only tend to advertise his insubordination, not to transmute his discharge into a "labor dispute."

Since the foregoing provisions of the Taft-Hartley law are not, in the opinion of this court, invoked by the complaint, the defendants' arguments are deemed not to be persuasive.

The case of Garner v. Teamsters, etc. Union, 74 S.Ct. 161, is precisely inapplicable, since it deals with an employer's desire to be protected against union efforts to recruit membership from among the employees of those plaintiffs; that activity was held to fall within the

domain of federal control established by Congress. The cases of Amalgamated Ass'n of St. Elec. Ry. & Motor Coach Emp. of America Division No. 998 v. Wisconsin Employment Relations Board, 340 U.S. 383, 71 S.Ct. 359, 95 L.Ed. 364, and International Union of United Automobile Aircraft and Agricultural Workers of America, C.I.O. v. O'Brien, 339 U.S. 454, 70 S.Ct. 781, 94 L.Ed. 978 are of the same general character and do not touch the present controversy, since there is no comparable labor union effort asserted in this complaint on the part of Schelero or the defendant I.L.A., A. F. of L.

■ That the courts of this State may function in the area comprehending labor relations, as to which the Garner case [714 S.Ct. 164] says that the act "leaves much to the states, * * *" see American Guild of Musical Artists v. Petrillo, 286 N.Y. 226, 36 N.E.2d 123; Goodwins v. Hagedorn, 303 N.Y. 300, 101 N.E.2d 697;

Whether the failure of the complaint to allege union activity on the part of Schelero was a calculated omission or not, the pleading must be dealt with in the form in which it is drawn.

The remaining reliance upon the theory that the Taft-Hartley law is necessarily drawn into this controversy has to do with the conduct of the defendant B.M.E. as alleged in Paragraph 27 of the complaint, which in summary form avers an agreement between that organization and Schelero, whereby the members of B.M.E. "although not associated or connected with the defendants Schelero or A. F. of L.—I.L.A., nor involved in any labor dispute with plaintiffs" refused to supply power on the decks of ships or to shift the latter with main engines, if any longshoremen should try to work * * * unless defendant Schelero is rehired.

It appears from the supporting affidavit of McLaughlin that instructions were duly issued by the B.M.E. to the engineers reading as follows:

"1/4/54

"Since AF of L—ILA longshoremen are picketing pier engineers are permitted to go and come and maintain plant. But if any longshoreman tries to work no power is to be supplied on decks and no power supplied to shift ship with main engines. If longshoreman tries to work notify company that plant will be shut down.

(s) R. Doell
Brotherhood of Marine Engineers."

■ The allegations of the complaint and the above quotation from the supporting affidavit spell out a secondary boycott on the part of B.M.E., but not such a one as runs counter to the said statute, namely, § 8(b)(4)(A) and (D), (b)(6). These provisions are aimed at a secondary boycott on the part of a labor union for the purpose of forcing or requiring an employer "to join any labor or employer organization or * * cease * * * selling * * * or otherwise dealing in the products of any other producer * * *, or to cease doing business with any other person".

Likewise for the purpose of requiring an employer "to assign particular work to employees in a particular labor organization * * * rather than to employees in another labor organization".

Any prohibited secondary boycott is one undertaken "to cause or attempt to cause an employer to pay * * * any money * * * in the nature of an exaction, for services which are not performed or not to be performed"—featherbedding.

All that the complaint alleges against the B.M.E. is a secondary boycott, the purpose of which was to force Universal to rehire Schelero, not because of his union affiliations or lack of them, but because he was "unfairly discharged" as has been recited.

The cases cited by the defendants have been examined and do not involve a comparable state of facts or a decision which points to the necessity for hold-

ing that this particular controversy falls within the category of matters involving the employer-employee relationship, as to which the Federal Government has pre-empted the power of determination.

It is now clearer than it was at the time of argument why the petition to remove was thought to be defective, in that it failed to accord with the requirements of Title 28 U.S.C. § 1446 in that it did not contain "a short and plain statement of the facts which entitle him or them (the petitioner or petitioners) to removal * * *."

It is now clear that the reason that no facts were alleged in the petition to indicate that the complaint alleged matters involving "a claim or right arising under the Constitution, treaties or laws of the United States * * *" Title 28 U.S.C. § 1441(b) is that no such statutes were invoked by the allegations of the complaint, but the showing is of a discharge of an individual employee for cause as alleged, under circumstances that can be adequately dealt with on the merits in the court in which the cause was laid.

The case of Pocahontas Terminal Corp. v. Portland Bldg. & Const. Trade Council, D.C., 93 F.Supp. 217, is urged by defendants to be dispositive of this case, but that argument is unsound. There the defendant union was picketing the plaintiff's building operation, and the pickets carried signs denouncing the plaintiff as being unfair to labor in that two of his sub-contractors employed non-union labor. The court stated that this was done to coerce those sub-contractors into signing a closed shop agreement, thus exposing a violation of the act, namely, § 8(b)(2); (b)(1); (b)(4)(B), and hence the cause was properly removed and required decision by the Federal Court.

The following language occurs at page 225 of 93 F.Supp.:

"The test of removal to a Federal court is not what the court must ultimately do with the case under Federal law but whether the Federal law applies to and controls the case by its provisions, as brought into operation by the complaint (citing cases).

"It is clear that in the present case a Federal law regulating commerce is directly involved by the allegations of the complaint, so that this Court has original jurisdiction of the case, without regard to the final decision which this Court must reach, in accordance with the governing Federal law."

There is no present disposition to take a view differing from the foregoing expression, but the effort has been made to distinguish the facts here involved from those before the court in connection with which the foregoing opinion was written.

The same comment applies to Direct Transit Lines v. Local, etc., 6 Cir., 199 F.2d 89; S. E. Overton v. International Brotherhood of Teamsters, etc., D.C., 115 F.Supp. 764.

It thus becomes unnecessary to discuss the possible bearing of the Norris-LaGuardia law, but it may be appropriate to observe that none of the cases appearing on pages 27 to 29 inclusive in defendants' brief is seen to involve the question of an employer's right to discharge an employee for cause, and as the central issue in such a controversy.

The motion to remand is granted, obviously without intending to indicate any views upon the merits of this case.

Settle order.