REGAN, Judge.
The plaintiff, Gulf Shipside Storage Corporation, instituted this suit against the defendants, Manny Moore, Louis Born, James Schwehm and Nash Wise, individually, as officers and members of the General Truck Drivers, Chauffeurs, Warehousemen and Helpers Union, Local 270 A. F. of L. and as representatives of all other officers and members of that union, whose names and addresses are unknown to plaintiff and which are too numerous to name individually herein, seeking a writ of injunction to restrain defendants and other members of the union, which they represent, from illegally picketing the warehouse facilities operated by it in the City of New Orleans.
Pending the trial on the rule nisi for a preliminary injunction, the court, a qua, on January 5, 1954, issued a temporary restraining order prohibiting the defendants from engaging in or causing picketing of plaintiffs warehouse facilities.
Defendants then filed a motion to dissolve the temporary restraining order averring that since the issues presented in this suit had been- adjudged in a prior proceeding involving the same parties (No. 326-124 of the docket of the 'Civil District Court) that court was without jurisdiction rationae máteriae and rationae personae.
■ Following a hearing by the court, a qua-, on .the- motion to dissolve on the basis of the facts and allegations set forth in the pleadings and affidavits attached thereto, it rendered judgment recalling and setting aside the temporary restraining order previously issued and dismissed'plaintiff’s petition for the reason that “the matter’ is exclusively within the- jurisdiction- of that board- (National Labor Relations Board) and this court is without jurisdiction to interfere, unless, of course, there is some charge of violence or interference with the public health, morals or peace.”
Plaintiff appealed suspensively from the judgment to this court, and applied to the Supreme Court of Louisiana for writs of prohibition, certiorari and mandamus to issue under the supervisory jurisdiction of that court. The application for writs was denied and the appeal is now before this court. - '
There appears to be no serious dispute concerning the : faóts herein. Plaintiff is engaged in the public warehouse business in the City of New Orleans, where it operates three warehouses. Defendants are officers and members of the General Truck Drivers, Chauffeurs, Warehousemen and Helpers Union, Local 270 A. F. of L. (for purpose of brevity we shall hereinafter refer to this union as Local 270) which labor Organization had been certified as the collective bargaining répresentative of plaintiff’s em *238 ployees by the National Labor. Relations. Board, in which status Local 270 had represented plaintiff’s employees for several years and entered into contracts on their behalf. The last collective bargaining agreement between plaintiff and defendants,’ as representatives of plaintiff’s employee's,'was executed in 1952, to operate for the period from February 1, 1952 through July 31, 1953, unless either party notified the other of a desire to modify the existing agreement, in which case the contract would remain in force until superseded by a new agreement. Timely notice of a desire to modify the contract, then in existence, and to continue it in effect after its expiration date, was given by defendants on May 13, 1953, and the provision in the agreement for continuing it in' effect after its expiration date until a new agreement was executed became operative. However, before plaintiff’s representatives coüld meet with defendants, a rival labor organization intervened and claimed to represent the majority of plaintiff’s .employees and demanded recognition by plaintiff. Plaintiff could not legally-.proceed to bargain with either defendants or the rival union ,until the question of representation had been settled. Both labor organizations submitted the question of representation to the National Labor Relations Board which, after conducting a hearing and an election, again certified Local 270, on September 24, 1953, as the collective bargaining’ ’representative of plaintiff’s employees.
Immediately thereafter, plaintiff’s representatives initiated bargaining negotiations with defendants for the purpose of modifying the existing agreement in certain particulars.
.After continuous negotiations by the parties for approximately one month, progress had been made and representatives of both parties agreed to certain, modifications. On October 23, 1953, the defendants appeared at a bargaining meeting and announced that all modifications previously agreed to were-withdrawn and new proposals were submitted to the plaintiff’s representatives. These were discussed on that date with the result that an agreement was reached on some of the proposed changes to the existing contract. On October 26, 1953, without notice to plaintiff, defendants caused plaintiff’s employees to strike .and picket the warehouses-and vehicles operated by it.
On the same day plaintiff instituted suit against the same defendants herein, which suit is entitled Gulf Shipside Storage Corporation v. Manny Moore, et al. No. 326 124 of the.docket of the Civil District Court, and that court issued a temporary restraining order prohibiting the defendants from picketing plaintiff’s warehouse facilities and vehicles. Although the defendants discontinued the picketing complained of on October 27, 1953, plaintiff’s employees, who were members of Local 270, persisted in their refusal to return to work and plaintiff was forced to employ men, not members of Local 270, in order to continue operating its business.
After a hearing on the rule nisi, a preliminary injunction, which included the same prohibitions as the temporary restraining order in force at that time, was issued by the district court on November 6, 1953, to remain in force for sixty days, effective October 26, 1953 and expiring December 24, 1953. On November 7, 1953, the day following the issuance of the -preliminary injunction, defendants advised plaintiff that .members of their union were then prepared to resume their employment. Plaintiff replied that all jobs in its work force had been filled by non-union members, who had applied for work during the two week period when the members of Local 270 refused to work. A trial on the merits by the lower court was begun on November 17, 1953, for the purpose of determining whether the preliminary injunction should be made permanent for the full sixty days for which it was issued- or dissolved. Prior to the trial on the merits, a rule for contempt filed by plaintiff against defendants and two members of Local, 270, Moses Rosemond and Jasper Lindsey, was heard and they were found guilty of con7 tempt for having violated the preliminary injunction. Before the trial court could render its decision on the merits, the defendants in the rule for contempt notified *239 the court of their intention to apply to the Supreme Court for remedial writs, which caused the matter to be held in abeyance until December 11, 1953, at which time the Supreme Gourt denied the application and thereby freed the district court so that it could proceed with the matter. The preliminary injunction was extended to 12 o’clock noon of January 2, 1954, when it expired, and plaintiff’s suit was subsequently dismissed.
On January 5, 1954, defendants or other members of Local 270 then resumed picketing of plaintiff’s business establishments and, at the same time, instructed the members of Local 270, employed by union carriers in the New Orleans area, to refuse to handle, work on or transport any merchandise shipped to or from plaintiff’s warehouses. In consequence thereof, plaintiff then instituted the present suit. Meanwhile, on December 5, 1953, plaintiff had been notified by the National Labor Relations Board that its employees had filed a decer-tification petition, with that board, in order that a hearing and election could be held and defendants’ union, Local 270, decerti-fied as the collective bargaining representatives of plaintiff’s employees.
In our opinion the only question posed for our consideration is whether the state courts or the National Labor Relations Board has jurisdiction of this controversy?
Plaintiff insists that
“In the National Labor Relations Act, as amended, Congress specifically limited the application of that Act to avoid any conflict with state law which deals with the execution or application of agreements requiring membership in a labor organization as a condition of employment, by providing as follows:
“ ‘Nothing in this Act shall be construed as authorizing the execution or application of agreements requiring membership in a labor organization as a condition of employment in any State or Territory in which such execution or application is prohibited by State or Territorial' Law.’ Sec. 14(b) Labor-' Management Relations Act, 1947, 61 Stat. 135, as amended, 29 USC[A], Sections 141-197, 1947.
“The foregoing provision of the National Labor Relations Act, as amended, provides an area in which the several states are free to declare, either by legislative action, through their courts or both, agreements requiring membership in a labor organization as a condition of employment illegal. A state, once having declared that the execution or enforcement of such agreements are illegal, is thereby given the authority by Congress to prevent the execution of application of any agreement containing the prohibited provision. Accordingly, the Courts in such states are given paramount jurisdiction by Congress over any actions which tend to result in the execution or application of such prohibited agreements since Congress has stated that nothing in the Federal Act shall be construed contrary to the laws of such state.
“By reference to the Louisiana revised statutes of 1950, [LSA] R.S. 23 :822, it is clear that Louisiana is one of those states covered by the provisions of Section 14(b) of the National Labor Relations Act, as amended, supra. The Louisiana statute provides : .
“ ‘Negotiation of terms and. conditions of labor should result from voluntary agreement between employer and employee. Governmental authority has permitted and encouraged employers to organize in the corporate and other forms of capital control. In dealing with such employers the individual unorganized worker is helpless to exercise actual liberty of contract and to protect his freedom of labor, and thereby to obtain acceptable terms and conditions of employment. Therefore, it is necessary that the individual workman have full freedom of association, self-organization, and designation of representatives of his own choosing, to negotiate the terms and conditions of his employment, and that he shall be *240 free from the interference, restraint, or coercion of employers of labor, or their agents, in the designation of such representatives or in self-organization or in 'other concerted activities for the purpose of collective bargaining or other mutual aid or protection.’
“By the terms of the foregoing statute, individual employees in Louisiana must be free from any interference, restraint or coercion by employers of labor, regardless of the form which such coercion might take, in designating his collective bargaining representative or other concerted activities. Consequently, no employer in Louisiana may enter into an agreement which will coerce his employees and interfere with any of the rights guaranteed to those employees by the Louisiana statute. Louisiana District Courts have so held in the following cases: Roemer Dairies v. General Truck Drivers, Chauffeurs, Warehousemen and Helpers, Local 270, Civil District Court for the Parish of Orleans, No, 320-390; Gulf Shipside Storage Corporation v. Manny Moore, et al. No. 326-124, Civil District Court, Parish of Orleans. The Louisiana Courts, therefore, have paramount jurisdiction to prevent the execution by an employer of labor of any agreement with a labor organization which would require, as a condition of employment, that his employees become members of a labor organization in order to continue in his employment.”
The recent case of Garner v. Teamsters Union, 1953, 346 U.S. 485, 74 S.Ct. 161 is, we believe, apposite and controlling herein. That case involved an employer engaged in interstate commerce, who hired twenty-four employees, four of whom were members of the picketing union. There was no labor dispute at the time, however, pickets were placed at the employer’s loading platform in an attempt to gain union recognition at the plant in order to ohtain union wages, hours and working conditions. Picketing was orderly and peaceful, but drivers for, other carpers refused to cross this- picket, line and, as most of .the employer’s interchange of freight was with unionized concerns, their-business fell off as much as 95%. The equity court in Pennsylvania granted in-junctive relief on 'the ground that the union’s conduct violated the Pennsylvania Labor Relations Act. The Supreme Court of Pennsylvania, 373 Pa. 19, 94 A.2d 893 reversed the lower court and held that the employer’s grievance fell within the jurisdiction of the National Labor Relations Board to prevent unfair labor practices and it was affirmed by the United States Supreme Court. The United States Supreme Court, in considering whether the' state courts of Pennsylvania or the National Labor Relations Board had jurisdiction of the controversy, quoted the Pennsylvania statute, which is substantially the same as the Louisiana Statute quoted hereinabove. It reads in part:
“Under prevailing economic conditions- developed with the aid of governmental authority for owners of property to organize in the corporate and other forms of ownership association, the individual unorganized worker is commonly helpless to exercise actual liberty of contract and to protect his freedom of labor, and thereby to obtain acceptable terms and conditions of employment, wherefore, though, he should be free to decline to associate with his fellows, it is necessary that he have full freedom of association, self-organization, and designation of representatives of his own choosing to negotiate the terms and conditions of his employment, and that he shall be free from the interference, restraint or coercion of employers of labor or their agents in the designation of such representatives or 'in self-organization or in other concerted activities for the purpose of collective bargaining or other mutual aid or protection.” 43 Purdon’s Penn. Statutes § 206b.
The unanimous Supreme Court [346 U.S. 485, 74 S.Ct. 164], speaking through ,Mr. Justice Jackson, then said:
“The national Labor Managements Relation Act, as we have, before pointed out, * * * leaves much to the *241 states, though Congress has refrained from telling us how much. We must spell out from conflicting indications of congressional will the area in which state action is still permissible.
“This is not an instance of injurious conduct which the National Labor Relations Board is without express power to prevent and which therefore either is ‘governable by the state or it is entirely ungoverned.’ In such cases we have declined to find an implied exclusion of state powers. International Union, U.A.W., A. F. of L., Local 232 v. Wisconsin Employment Relations Board, 336 U.S. 245, 254, 69 S.Ct. 516, 521, 93 L.Ed. 651. Nor is this a case of mass picketing, threatening of employees, obstructing streets and highways, or picketing homes. We have held that the state still may exercise ‘its historic powers over such traditionally local matters as public safety and order and the use of streets and highways.’ Allen-Bradley Local No. 1111, United Electrical Radio and Machine Workers of America v. Wisconsin Employment Relations Board, 315 U.S. 740, 749, 62 S.Ct. 820, 825, 86 L.Ed. 1154, Nothing suggests that the activity, enjoined threatened a probable breach of the state’s peace or would call for extraordinary police measures by state or city authority. Nor is there any suggestion that petitioners’ plea of federal jurisdiction and preemption was frivolous and dilatory, or that the federal Board would decline to exercise its powers once its jurisdiction was invoked. ■
“Congress has taken in hand this particular type of controversy where it affects interstate commerce. In language almost identical to parts of the Pennsylvania statute, it has forbidden labor unions to exert certain types of coercion on employees through the medium of the employer. * * * It is not necessary or appropriate for us to surmise how the National Labor Relations Board might have decided this con troversy had petitioners presented it to that body. The power and duty of primary decision lies with the Board, not with us. But it is clear that the Board was vested with power to entertain petitioners’ grievance, to issue its own complaint against respondents and, pending final hearing, to seek from the United States District Court an injunction to prevent irreparable injury to petitioners while their case was being considered. * * * The question then is whether the State, through its courts, may adjuge the same controversy and extend its own form of relief.
“Congress did not merely lay down a substantive rule of law to be enforced by any tribunal competent to apply law generally to the parties. It went on to confide primary interpretation and application of its rules to a specific and specially constituted tribunal and prescribed a particular procedure for investigation, complaint and notice, and hearing and decision, including judicial relief pending a final administrative order. Congress evidently considered that centralized administration of specially designed procedures was necessary to obtain uniform application of it substantive rules and to avoid these diversities .and conflicts likely to result from a variety of local procedures and attitudes toward labor controversies. Indeed, Pennsylvania passed a statute the same year as its labor relations Act reciting abuses of the injunction in labor litigations attributable more to procedure and usage than to substantive rules. * * . * A multiplicity of tribunals and a diversity of procedures are quite as apt to produce incompatible or conflicting adjudications as are different rules of substantive law. The same reasoning which prohibits federal courts from intervening in such cases, except by way of review or on application of the federal Board, precludes state courts from doing so. Cf. Meyers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 58 S.Ct 459, 82 L.Ed. 638; Amalgamated Utility Workers v. Consolidated Edison Co. of New York, 309 *242 U.S. 261, 60 S.Ct. 561, 84 L.Ed. 738. And the reasons for excluding state administrative bodies from assuming control of matters expressly placed within the competence of the federal Board also exclude state courts from like action. Cf. Bethlehem Steel Co. v. New York State Labor Relations Board, 330 U.S. 767, 67 S.Ct. 1026, 91 L.Ed. 1234.”
For the reasons assigned the judgment appealed from is affirmed.
Affirmed.