No. 39,301

TEXAS CONSTRUCTION COMPANY, *Appellee,* v. HOISTING AND PORTABLE ENGINEERS' LOCAL UNION No. 101, Affiliated with The International Union of Operating Engineers, A. F. of L., an unincorporated Labor Organization or association; JESS HARDY, individually and as Business Agent of said labor organization; and all other members, agents and representatives of said labor organization whose real names are unknown to plaintiff and therefore cannot be given, as individuals and representatives of said labor organization, *Appellants.*

(286 P. 2d 160)

Opinion filed July 14, 1955.

*Robert L. Kimbrough,* of Topeka, argued the cause, and *George E. McCullough,* of Topeka, and *William H. Stowell,* of Phillipsburg, were with him on the briefs for the appellants.

*E. H. Hatcher,* of Topeka, argued the cause, and *D. A. Hindman,* of Stockton, was with him on the briefs for the appellee.

The opinion of the court was delivered by

HARVEY, C. J.: The sole question presented in this appeal is whether the trial court had jurisdiction of the subject matter. Appellants contend it did not.

We summarize or quote portions of the record bearing upon the question presented as follows:

Plaintiff is a Delaware corporation with its home office in Dallas, Texas, and is duly authorized to do business in this state. Its business consists of the construction of dams and various other types of construction work throughout the United States. At the time the action was filed plaintiff was the general contractor for the construction of the Kirwin Dam on the north fork of the Solomon River in Phillips County for the United States Department of Interior, Bureau of Reclamation.

Defendant is a voluntary, unincorporated labor association, with headquarters at Kansas City, Missouri, affiliated with the International Union of Operating Engineers, A. F. of L. Jess Hardy was its duly authorized business agent.

In plaintiff's petition it was alleged:

"V. Plaintiff does not now have a dispute of any kind or character with any of its employees in regard to wages, hours or other conditions of employment. Plaintiff does not now have, or has ever had at any time, any contractual or bargaining relationship with the above named union, or any of the individual defendants, and none of these defendants nor anyone else has ever been designated as the bargaining agent or representative of the employees of plaintiff. Plaintiff's employees do not now have nor have they ever had a dispute of any kind or character with the defendants. None of plaintiff's employees belong to defendant union and they have all expressed their desire to not become affiliated with said union to plaintiff. On or about March 23, 1953, notwithstanding the fact that there was no labor dispute existing between plaintiff and said defendant union, and notwithstanding the fact that all of plaintiff's employees had made known to plaintiff and defendant union their desire not to join defendant union, defendants caused pickets to be placed at the entrance to the Kirwin Dam Project, one-half mile south of Kirwin, Phillips County, Kansas. The pickets carried banners bearing the following phraseology: 'Texas Construction Company Refuses to Pay Union Wage Scale to Operating Engineers (Hoisting and Portable Engineers—Local 101) A. F. of L.' 'Texas Construction Company Unfair to Organized Labor and Refuses to Employ Union Operating Engineers.' Plaintiff, in the construction of said Kirwin Dam, necessarily uses materials and equipment which must be transported from distant points. The aforementioned pickets have consistently and repeatedly stopped the drivers of trucks transporting materials and equipment into the Kirwin Dam Project and threatened to 'skin their heads' and do them other bodily harm if they should cross the picket line. Said pickets have also threatened plaintiff's employees with bodily harm if they continue to work on the construction of the Kirwin Dam. As a result of said violent acts and threats by the pickets, many of the truck drivers transporting materials and equipment to the Kirwin Project have been afraid and refused to cross the picket line, and the construction of the Kirwin Dam has been impeded and 'slowed down' because of the loss of use of said equipment and the deprivation of the use of said materials. The intent and purpose of said picketing is to unlawfully compel plaintiff to recognize the defendant union as exclusive representative of plaintiff's employees for the purpose of collective bargaining and to unlawfully compel plaintiff to sign a collective bargaining agreement with the Union. Defendants well know that the placing of pickets about the premises of the Kirwin Dam Project, as aforesaid, for the purpose of accomplishing the unlawful objects as aforesaid will result in and have the necessary effect of stopping delivery of goods and materials to said premises and will interfere with, impede and slow down the construction of said Kirwin Dam. Defendants well know that plaintiff is obligated under the law to recognize as exclusive bargaining agent only a labor organization which is selected by majority of plaintiff's employees and

defendants well know that for plaintiff to recognize the union as the labor organization selected by a majority of their employees, when in fact and in truth all of plaintiff's employees desire not to belong to said union and do not wish to enter the union to represent them as exclusive bargaining agent, will be contrary to law and compel plaintiff to commit unlawful acts and that plaintiff would unlawfully be interfering with the rights of the employees to freely choose, designate and select a labor organization of their own choice as guaranteed by law. Plaintiff can not lawfully so recognize the union and force upon its employees a collective bargaining agent which is not of their own choosing.

"VI. Such pickets so unlawfully placed at, about and around the premises at the Kirwin Dam Project were placed there at the direction of the defendants for the purpose of coercing employees of the plaintiff against their will to join said union and permit said union to be their exclusive bargaining agent, contrary to fact and without any such designation having been authorized by secret ballot and other proceedings rendered and provided by law.

"VII. The defendants and each of them have committed and caused the commission of unlawful acts complained of herein and have sought to injure and damage plaintiff by preventing the construction of said Kirwin Dam and unless restrained and enjoined from so doing will continue to prevent the construction of said dam and will continue to threaten plaintiff's employees with bodily harm."

It was further alleged that plaintiff had no adequate remedy at law. The prayer was that defendants be restrained and enjoined from picketing plaintiff's place of business.

Plaintiff's verified petition and verified motion for a restraining order were filed May 4, 1953, in the district court of Phillips County, Kansas. The temporary restraining order was issued on that day and the hearing upon the issuance of a temporary injunction was set for May 8, 1953, and notice was given to defendants. On May 8, 1953, the parties appeared and plaintiff introduced its evidence, and counsel for the respective parties made oral argument. The court took the matter under advisement. Briefs were furnished by counsel, and on May 19, 1953, the court made findings of fact and conclusions of law and granted the temporary injunction, requiring plaintiff to give a bond in a stated amount, which was done. The case was set for hearing on June 16, 1953, on its merits.

On May 19, 1953, defendants filed their answer, which reads:

"Come now the defendants and deny each and every allegation and statement of fact contained in the petition of plaintiff.

"For further answer defendants state that the relief sought, under the facts and allegations set forth is a denial to defendants of their rights under the constitution of the United States of America and specifically a denial of their rights under Amendments No. 1 and No. 14 to the constitution.

"For further answer defendants state that the facts in this matter are such that to grant an injunction would be a denial of the rights of the defendants under the constitution of the United States of America, and specifically under amendments No. 1 and No. 14 thereof."

On the same date they filed a motion to dismiss, which reads:

"Come now defendants and move that the court dismiss this action and the temporary injunction issued herein, for the reason that the findings of fact and conclusions of law made and entered in this matter by the court in the matter of the temporary injunction show that the court is without jurisdiction to entertain this matter and without jurisdiction to issue the temporary injunction."

When the court met on June 16, 1953, defendants presented their motion to dismiss. The same was considered by the court and denied. Plaintiff submitted the case to the court on the evidence presented on May 8. Defendants made their opening statement and produced evidence, and plaintiff offered evidence in rebuttal. Counsel for the respective parties argued to the court. Having considered the evidence and arguments, the court made findings of fact and conclusions of law fully set out in Appendix A attached hereto, and found generally in favor of the plaintiff and against the defendants in that the temporary injunction heretofore issued should be made permanent. The court also gave the parties 10 days to submit requests for additional findings of fact and conclusions of law. Judgment was rendered accordingly.

On June 18, 1953, defendants filed three motions: One for a new trial upon formal statutory grounds; another for the court to modify its decree of injunction, and another to dissolve, which reads:

"1. Plaintiff construction company is sufficiently engaged in interstate commerce so as to come within the purview of the National Labor Relations Act of 1947, as found by the court in the Conclusion of Law No. 3 and Finding of Fact No. 6. Therefore, this court is without jurisdiction to hear the matter as the Federal Government has declared exclusive jurisdiction to itself in matters involving unfair labor practices under said National Labor Relations Act."

On July 3, 1953, these motions were presented to the court. Each of them was considered by the court and denied except the court made supplemental findings of fact as follows:

"1. It has not been shown that the Union was unable to provide sufficient men to authorize a union shop had the plaintiff been willing to enter an agreement with the Union on that basis.

"2. Plaintiff's representative, Mr. Holland, did not inform the Union representatives that plaintiff had in its employ men in the classification represented by the Union.

"3. During the period of negotiations, to and including March 15, 1953, the plaintiff had not commenced actual dirt work on the project.

"4. On the 11th of March, 1953, plaintiff had in its employ one man of the engineer category represented by the Union. On the 15th day of March, 1953, the plaintiff had in its employ 5 men in the engineer classification eligible to be members of the Union. On March 14, 1953, plaintiff hired 15 additional men who were to go to work on Monday, March 16, 1953. None of employees mentioned in this paragraph were actually members of or represented by defendant Union.

"5. The Union sent some of its members to the plaintiff's employment office at Kirwin. None of the men sent were hired by plaintiff. Plaintiff claims it did not have any place where it could use such men at the time and did not know whether they were Union men or not. The contrary has not been shown."

On July 23, 1953, defendants filed their notice of appeal from the following judgments, orders and decisions:

"1. Over-ruling the defendants demurrer to plaintiff's evidence. 2. Over-ruling defendants Motion to Dissolve for want of jurisdiction. 3. Over-ruling the defendants Motion to *Modify*. 4. Over-ruling a second motion of the defendant to dissolve for want of jurisdiction. 5. Over-ruling defendants Motion for New Trial. 6. The refusal of the court to make findings of fact requested by the defendant. 7. Refusal of the court to make conclusions of law as requested by defendant. 8. The decree of temporary injunction allowed the 19th day of May, 1953. 9. The permanent decree of injunction allowed the 16th day of June, 1953. 10. All findings, intermediate rulings, decisions, orders, judgments, and decrees adverse to this defendant made prior to or during the trial of said cause or subsequent thereto."

The only specification of error reads:

"Overruling of defendant's Motions to Dismiss and Dissolve for want of jurisdiction of the court below to hear the matter."

Counsel for appellants (defendants below) in their briefs state: ". . . For the purpose of this appeal only, the defendants do not contest having engaged in activities described as unlawful by said Findings of Fact." A similar statement was made elsewhere in the briefs. "The matter, therefore, comes to the Supreme Court of the State of Kansas only upon the overruling of the Motion to Dissolve and the Motion to Dismiss for want of jurisdiction of the trial court." This means that appellants have abandoned all points contained in their notice of appeal except Nos. 2 and 4. There is, therefore, no appeal from the final judgment of the court, nor from the order overruling the motion for a new trial. The question here argued could have been presented had the appeal from the final judgment and the order overruling the motion for a new trial been presented here. No such an appeal is presented.

When counsel for appellants speak in their motions of the want of jurisdiction of the trial court we understand them to mean jurisdiction of the subject matter. Defendants filed an answer in this case and participated in the trial so there cannot be any lack of jurisdiction of the person of defendants, and there is no such claim. Counsel for appellants present as the "question involved" here,

"Did the trial court err in holding that the Labor Management Relations Act did not preclude the exercise of jurisdiction by a state court to issue preliminary injunctive relief at the request of private individuals for alleged violations of that act or state acts which perform essentially the same service?"

We think a less involved statement might be worded thus: Did the trial court lack jurisdiction to enjoin the continuance of acts which violate our state law because an act of Congress described similar acts as being unlawful?

This question has been decided in favor of appellants' contention by recent state cases which have reached the U. S. supreme court. In *Garner v. Teamsters' C. & H. Loc. Union 776*, 373 Pa. 19, 94 A. 2d 893, the paragraphs of the syllabus of the state court read:

"1. In enacting the Labor Management Relations Act of 1947, 61 Stat. 136, Congress intended to exclude state action enjoining picketing which constitutes an unfair labor practice on the part of a labor organization under the provisions of the Labor Management Relations Act, where such picketing is unlawful also under the state law.

"2. The passage of the Labor Management Relations Act constituted an absolute and complete preemption of the field by Congress in such a case and a state court has no jurisdiction to issue an injunction on behalf of employers engaged in interstate commerce.

"3. Where there is actual conflict between the provisions of a state statute and the National Labor Relations Act in regard to regulation of labor union activities in an industry affecting interstate commerce, the state act must give way to the federal act."

On certiorari to the U. S. supreme court the opinion is reported in 346 U. S. 485, 74 S. Ct. 161, and 98 L. Ed. 228, where the paragraphs of the headnote of the U. S. supreme court read:

"Petitioners were engaged in Pennsylvania in an interstate trucking business. Only a small minority of its employees were members of respondent union. No labor dispute or strike was in progress, and petitioners had not objected to their employees joining the union. Respondents kept two pickets at petitioners' loading platform, to coerce petitioners into compelling or influencing their employees to join the union. The picketing was peaceful, but petitioners' business fell off 95% because employees of other carriers refused to cross the picket line. *Held:* Petitioners' grievance was within the jurisdiction of the National Labor Relations Board to prevent unfair labor practices under the Labor

Management Relations Act, and was not subject to relief by injunction in the state courts.

"(a) The National Labor Relations Board was vested with power to entertain petitioners' grievance, to issue its own complaint against respondents, and, pending final hearing, to seek from a federal district court an injunction to prevent irreparable injury to petitioners.

"(b) The same considerations which prohibit federal courts from intervening in such cases, except by way of review or on application of the National Labor Relations Board, and which exclude state administrative bodies from assuming control of such matters, preclude state courts from doing so.

"(c) When federal power constitutionally is exerted for the protection of public or private interests, or both, it becomes the supreme law of the land and cannot be curtailed, circumvented or extended by a state procedure merely because such procedure will apply some doctrine of private right.

"(d) Congress, in enacting such legislation as the Labor Management Relations Act, can save alternative or supplemental state remedies by express terms, or by some clear implication, if it sees fit."

Later in *Building Trades Council et al. v. Kinard Construction Co.*, 74 S. Ct. 373, 346 U. S. 933, 98 L. Ed. 423, the U. S. supreme court reversed the decision of the supreme court of Alabama, 258 Ala. 500, 64 So. 2d 400, without opinion, upon the authority of *Garner v. Teamsters Union*, supra, and said:

"Since there has been no clear showing that respondent has applied to the National Labor Relations Board for appropriate relief, or that it would be futile to do so, the Court does not pass upon the question suggested by the opinion below of whether the State court could grant its own relief should the Board decline to exercise its jurisdiction."

We refer to the decision of the Alabama court for the facts of the case.

Still later (March 28, 1955) in *Weber v. Anheuser-Busch, Inc.*, 75 S. Ct. 480, 348 U. S. 468, the U. S. supreme court reversed the decision of the supreme court of Missouri, 265 S. W. 2d 325, which had affirmed a judgment of the circuit court of the city of St. Louis in a labor controversy which should have been presented to the National Labor Relations Board, citing the case of *Garner v. Teamsters Union*, and others. We refer to the decision of the supreme court of Missouri and the decision of the U. S. supreme court for a fuller statement of facts.

The Garner case and sometimes the Kinard case and the Anheuser-Busch case, or one of them, is cited and followed or distinguished because of the facts, in the following federal and state cases: *National Labor Relations Board v. Thayer Co.*, 213 F. 2d 748, 754; *International Union, Etc. v. Hinz*, 218 F. 2d 664, 665; *International*

*Union v. Underwood Corporation,* 219 F. 2d 100, 101; *Lanni v. Wyer,* 219 F. 2d 701; *Irving Subway Grating Co. v. Silverman,* 117 F. Supp. 671, 679, 680; *United Mineral & Chemical Corp. v. Katz,* 118 F. Supp. 433, 434; *Isbrandtsen Co. v. Schelero,* 118 F. Supp. 579, 582; *Your Food Stores of Santa Fe v. Retail Clerks, Etc.,* 121 F. Supp. 339, 342; *Time, Inc. v. T. I. M. E. Inc.,* 123 F. Supp. 446, 451; *Your Food Stores v. Retail Clerks' Local No. 1564,* 124 F. Supp. 697, 701; *Lock Joint Pipe Company v. Anderson,* 127 F. Supp. 692, 694; *Johnston v. Colonial Provision Company,* 128 F. Supp. 954, 955; *Dyer v. International Brotherhood, Etc.,* 269 P. 2d 199, 202, California; *Garmon v. San Diego Building Trades Council,* 273 P. 2d 686, 689, California; *Mahoney v. Sailors' Union of The Pacific,* 275 P. 2d 440, 444, Washington; *Building Trades Council of Reno v. Bonito,* 280 P. 2d 295, 296, Nevada; *Gulf Shipside Storage Corp. v. Moore,* 71 So. 2d 236, 240, Louisiana; *Douglas Public Service Corp. v. Gaspard,* 74 So. 2d 182, 185, Louisiana; *International Ass'n of Mach. v. Goff-McNair Motor Co.,* 264 S. W. 2d 48, 50, Arkansas; *Sheet Metal Wkrs. Int. Ass'n v. E. W. Daniels P. & H. Co.,* 264 S. W. 2d 597, 601, 605, Arkansas; *Wichita Falls & Southern R. Co. v. Lodge No. 1476,* 266 S. W. 2d 265, 268, Texas; *Coutlakis v. State,* 268 S. W. 2d 192, 197, 198, Texas; *Leiter Mfg. Co. v. International Ladies' Garment W. U.,* 269 S. W. 2d 409, 410, Texas; *McAmis v. Panhandle Eastern Pipe Line Company,* 273 S. W. 2d 789, 792, Missouri; *Grimes & Hauer, Inc. v. Pollock,* 119 N. E. 2d 889, Ohio; *New York, New Haven & Hartford R. Co. v. Jenkins,* 122 N. E. 2d 759, Massachusetts; *Benjamin v. Foidl,* 109 A. 2d 300, Pennsylvania; *Wortex Mills v. Textile Workers Union of America,* 109 A. 2d 815, 817, Pennsylvania; *Wilkes Sportswear v. International Ladies' G. W. U.,* 110 A. 2d 418, 421, Pennsylvania; *Hammer v. Local No. 211, Etc.,* 111 A. 2d 308, 317, New Jersey; *Morgan Millwork Co. v. Highway Truck Drivers, Etc.,* 112 A. 2d 855, 856, Delaware; *Sterling v. Local 436, Etc.,* 113 A. 2d 389, 395, Maryland; *Cortlandt Co. Dept. Store v. Cohen,* 127 N. Y. S. 2d 261, 263; *S. S. Pennock Co. v. Ferretti,* 128 N. Y. S. 2d 749, 755; *Willoughby Camera Stores v. District No. 15, Etc.,* 129 N. Y. S. 2d 734, 736; *General Teleradio v. Manuti,* 129 N. Y. S. 2d 757, 759; *New York State Labor Rel. Bd. v. Wags Transp. Sys.,* 130 N. Y. S. 2d 731, 750; *Davis v. Freedman,* 133 N. Y. S. 2d 793, 795; *In re United Steelworkers of America, CIO,* 134 N. Y. S. 2d 634, 639; *Bert Manufacturing Company v. Local 810, Etc.,* 136 N. Y. S. 2d 805, 807; *A. E. Nettleton Co. v. United Shoeworkers, Etc.,* 138

N. Y. S. 2d 256, 258; and, *People v. Framer,* 139 N. Y. S. 2d 331, 340. This list may not be complete; the next mail may bring more. A few earlier cases are cited in 32 A. L. R. 2d 1026, 1032. Practically every law journal which comes to our law library has an article on the Garner case.

We are not impressed with the incongruous contention of counsel for appellants to the effect that a finding of the court disclosed the court had no jurisdiction for if the court had no jurisdiction of the subject matter any finding it made was of no force. However, the record clearly discloses that there was no controversy about this being a case which could properly be handled by the National Labor Relations Board. The leading counsel for plaintiff in the trial court (who does not appear in this court) after stating the fact the matters complained of were in violation of the laws of this state further pointed out they also violated the Act of Congress, and explained his view of how defendants could have had the case transferred to that Board but did not do so. Plaintiff's contract was substantial. It called for the building of a dam 2.4 miles long across the river, which would be 117 feet in height above the bed of the stream and when completed the dam would hold a lake of about 5,000 acres with an average depth of water of 66 feet. The purpose of the dam was twofold; first, to hold the water at times of flood to prevent destruction of the cities and lowlands below the dam; and second, to impound water for irrigation which would be picked up about 3 miles below the dam and extend about 18 miles, and furnish irrigation for several thousand acres in time of drought; irrigation and flood control for thousands of acres of land in northwestern Kansas. While it was not gone into extensively there was testimony that the machinery and much of the equipment for the construction of the dam would have to be brought from a distance. Two of the three trucks stopped by the picket line were from out of the state. Plaintiff was doing interstate work for the government in many states. That was its business.

We think it clear under the ruling of the supreme court in the Garner case and subsequent cases of the federal and state courts that we are compelled to hold that the trial court in this case had no jurisdiction of the subject matter of the action.

The judgment of the trial court is reversed with directions to set aside the injunction and to dismiss the action.

ROBB, J., not participating.

## APPENDIX A

After the hearing on May 8, counsel for the respective parties submitted briefs, and the court, on May 19, 1953, found generally in favor of plaintiff and against defendant, and adopted the following as its findings of fact and conclusions of law.

### "FINDINGS OF FACT

"1. Plaintiff does not have any dispute of any kind or character with any of its employees in regard to wages, hours or other conditions of employment, and has not had any such dispute.

"2. Plaintiff does not have any contractual or bargaining relationship with defendant union or with any individual defendant and no one has ever been designated as the bargaining agent or representative of the employees of plaintiff.

"3. None of plaintiff's employees belong to defendant Union. There is no evidence that any of them desire to belong to it. Some have expressed a desire not to belong to it.

"4. The defendant Union has caused pickets to be placed at the principal entrance of the Kirwin Dam project in Phillips County, Kansas, on which plaintiff is working. During about five hours of each day there are two pickets walking the picket line. During about six additional hours each day there is only one picket. At times either or both of these pickets might be joined by the business agent of the defendant Union, the defendant Jesse Hardy, but most of the time there was only one or two pickets on the line.

"5. The pickets carried banners worded as follows: 'Texas Construction Company Refuses to Pay Union Wage Scale to Operating Engineers (Hoisting and Portable Engineers—Local 101) A. F. of L.' 'Texas Construction Company Does not Employ Union Operating Engineers.' Plaintiff claims that instead of last quoted banner, a banner worded as follows was carried: 'Texas Construction Company Unfair to Organized Labor And Refuses to Employ Union Operating Engineers'.

"The Court does not consider proof of this last wording satisfactory. It was elicited by leading questions, which were not objected to. Only witness who was cross examined as to wording, showed no real knowledge of same. If banner or sign was ever carried, worded as claimed by plaintiff, such wording had been corrected before action commenced.

"6. Court finds wording on signs carried by pickets to be truthful statements. Statement claimed by plaintiff to have been on one sign would not have been true.

"7. The picketing has been peaceful and without violence or threats of violence. No threats of violence have been made to plaintiff's employees.

"8. Three trucks were caused to stop by the presence of the pickets and were either driven on to the project by plaintiff's employees or were unloaded outside the picket line and their contents carried to project by plaintiff's own trucks. Other trucks were routed on to project by less convenient routes than the ones picketed by defendants in order to avoid crossing the picket line. This has 'slowed down' and impeded the work on the dam and will continue to do

so, if pickets are maintained at principal entrance to the dam as at present, and has caused and will cause the plaintiff expense.

"9. The intent and purpose of the picketing is to compel plaintiff to recognize defendant Union as exclusive representative of plaintiff's employees for the purpose of collective bargaining and to compel plaintiff to sign a collective bargaining agreement, Plaintiff's Exhibit No. 1, and to thereby cause plaintiff to compel its employees, who are eligible to join defendant union.

"10. Plaintiff has paid within five or ten cents of the Union wage scale, per hour, to its employees, and has paid the legal minimum wage or in excess thereof. It may never have stated it refused to pay union wage scale, but has not paid same by 5 or 10 cents.

"11. Neither the plaintiff, nor the defendant Union are primarily interested in the welfare of the employees of plaintiff on the Kirwin Dam project. The court concedes to the Union, without making a specific finding thereon, the desire to improve working and living conditions of working men generally and more particularly those classified as Operating Engineers.

"12. The employees hired by plaintiff on the Kirwin Dam project were employed without being asked whether they belonged to a union or not. Lack of union membership was not a prerequisite to employment on said project by plaintiff.

"13. Shortly before March 23, 1953, the defendants, C. G. Hamilton and Jesse Hardy, had a conference with plaintiff's manager, Mr. Holland, in which one of the said defendants told him if plaintiff did not sign the contract, Exhibit 1, things would 'get tough' or words to that effect. At said conference, the parties raised their voices and voices sounded angry.

"14. The plaintiff is sufficiently engaged in interstate commerce to make it and its employees subject to The Labor Management Relations Act, 1947, of the United States.

"15. Allegations of Paragraph 1 of plaintiff's petition are true. Its contract with the United States fixes a completion date for work under its contract."

"CONCLUSIONS OF LAW.

"1. The purpose of the contract, Exhibit 1, is unlawful, that is to compel plaintiff to recognize the defendant Union as collective bargaining representative of its employees without an election having been had, and to cause plaintiff to compel its employees to join the defendant Union. For plaintiff to do either of these things would be in violation of The Labor Management Relations Act, 1947, of the United States and in violation of Sections (4) and (14) of Section 44-809 G. S. 1949, Kansas. Because of Clause No. VIII of the proposed contract, Exhibit 1, any of the parties thereto might gain an acquittal, if criminally prosecuted for entering into the contract, but the intent of the contract is to compel the plaintiff to do unlawful acts as aforesaid, not to agree to something and then in same contract say, 'Most of above is not binding on anyone'.

"2. The picketing is unlawful because of Conclusion No. 1, above, and because it is for the purposes set out in Finding of Fact No. 9. It is further unlawful because it violates Section (15) of Section 44-809, G. S. 1949, Kansas.

"3. No bona fide labor dispute exists at Kirwin Dam project.

"4. Temporary injunction should issue.

"IT IS THEREFORE, BY THE COURT, IN ACCORDANCE WITH ITS FINDINGS OF FACT AND CONCLUSIONS OF LAW, CONSIDERED, ORDERED, ADJUDGED AND DECREED that the defendants, and each of them in their individual and representative capacity, and any and all others acting on their behalf or at their behest or in concert with them, be and they are hereby, temporarily enjoined from picketing, establishing or maintaining a picket or picket line at, on, about or in the vicinty of the Kirwin Dam project one-half mile south of Kirwin, Phillips County, Kansas; that this injunction shall not enjoin defendants from circularizing plaintiff's employees as to the desirability of Union membership or interviewing them for the same purpose if done in a peaceful manner and without threats or a display of banners or placards, or without interferring with the progress of plaintiff's work and not to be done on plaintiff's time.

"IT IS FURTHER ORDERED that plaintiff post bond in the amount of $1,000.00 to secure the court costs and damages to any party who might be found to have been wrongfully enjoined.

"IT IS FURTHER ORDERED that this matter be set down for final hearing on June 16, 1953, at 10:30 a. m., in the District Court of Phillips County, Kansas."

At the time of final judgment the court made supplemental findings of fact as follows:

"1. It has not been shown that the Union was unable to provide sufficient men to authorize a union shop had the plaintiff been willing to enter an agreement with the Union on that basis.

"2. Plaintiff's representative, Mr. Holland, did not inform the Union representatives that plaintiff had in its employ men in the classification represented by the Union.

"3. During the period of negotiations, to and including March 15, 1953, the plaintiff had not commenced actual dirt work on the project.

"4. On the 11th of March, 1953, plaintiff had in its employ 1 man of the engineer category represented by the Union. On the 15th day of March, 1953, the plaintiff had in its employ 5 men in the engineer classification eligible to be members of the Union. On March 14, 1953, plaintiff hired 15 additional men who were to go to work on Monday, March 16, 1953. None of the employees mentioned in this paragraph were actually members of or represented by defendant Union.

"5. The Union sent some of its members to the plaintiff's employment office at Kirwin. None of the men sent were hired by plaintiff. Plaintiff claims it did not have any place where it could use such men at the time and did not know whether they were union men or not. The contrary has not been shown."

In the final judgment after having heard all the evidence and the arguments of counsel the court found generally in favor of the plaintiff and against defendants and adopted the findings of fact and conclusions of law previously made, and decreed,

". . . that the temporary injunction heretofore entered herein be, and the same is hereby made permanent and the defendants, and each of them in their individual and representative capacity, and any and all others acting on

their behalf or at their behest or in concert with them, be, and they are hereby, permanently enjoined from picketing, establishing or maintaining a picket or picket line at, on, about or in the vicinity of the Kirwin Dam Project one-half mile south of Kirwin, Phillips County, Kansas; that this injunction shall not enjoin defendants from circularizing plaintiff's employees as to the desirability of union membership or interviewing them for the same purpose if done in a peaceful manner and without threats or a display of banners or placards, or without interfering with the progress of plaintiff's work and not to be done on plaintiff's time."